UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| REGINALD WILLIAMS | CIVIL ACTION NO. 18-1144 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| MARTIN MARIETTA, ET AL. | MAGISTRATE JUDGE HAYES |

## MEMORANDUM RULING

Before the Court is Defendants' motion for summary judgment. Record Document 20. Plaintiff opposed the motion and objected to the Court's consideration of evidence submitted to support Defendants' motion. Record Document 26. Defendants replied, and the motion is ripe for review. Record Document 29. For the reasons stated herein, Defendants' motion for summary judgment [Record Document 20] is **GRANTED**.

## BACKGROUND

Plaintiff Reginald Williams ("Williams"), a black male, began working as a ready-mix concrete truck driver for Martin Marietta Materials, Inc.[1] ("Martin Marietta") in 2014. Record Document 26-3 at 1. Williams worked at the Bossier City, Louisiana plant without incident until June 2016. Record Documents 20-2 at 9 and 26-3 at 1. In early June, Williams acknowledged that he understood Martin Marietta's updated attendance policy which laid out the company's progressive discipline guidelines. Record Document 20-2 at 47-50. Under this

---

[1] Williams brought suit against Martin Marietta Materials, Inc. and Bossier City Ready Mix. Record Document 1. According to Defendants, Martin Marietta Materials, Inc. is Williams's employer. Record Document 5 at 1. The Court will refer to the Defendants as Martin Marietta.

1

policy, Martin Marietta specified that a certain number of absences would result in a particular disciplinary action. *Id.* at 49. The policy also stated that "[i]f an employee has current disciplinary actions on file for any reason, then attendance policy violations would result in disciplinary actions at the next appropriate step." *Id.* Later that month, Williams was written up and suspended for insubordination after refusing to clock out during the day and instead work the night shift.[2] Record Document 20-2 at 14-15, 51, and 94. This write-up, which Williams refused to sign, stated that "[a]ny further performance infractions will result in further disciplinary action, up to and including termination." Record Document 20-2 at 51.

By February 2017, Williams's father was in failing health. Record Document 20-2 at 35. Anticipating that he may be required to care for him in Arkansas, Williams requested FMLA leave paperwork from Martin Marietta on February 7, 2017 and received it on February 8, 2017.[3] Record Documents 20-2 at 15 and 26-7. Shortly after this, on either February 14 or February 21, 2017, Williams states that Martin Marietta first attempted to terminate his employment. Record Documents 20-2 at 26 and 26-3 at 5. According to Williams, Martin Marietta's termination decision was based on his numerous absences or late arrivals to work. Record Documents 20-2 at 26 and 26-3 at 5-6. This decision was reversed, however, when

---

[2] Williams disputes details of the incident and whether the disciplinary action was warranted but concedes that he was disciplined. Record Documents 20-2 at 14-15 and 26-3 at 1-4.

[3] In opposing Martin Marietta's motion for summary judgment, Williams asserts that his FMLA leave was intended to allow him to care for his father and his stepmother. Record Document 26-1 at 10, 24. Martin Marietta objects to this assertion as an improper attempt at raising an additional FMLA interference claim. Record Document 29 at 4. This is ultimately immaterial to the Court's ruling.

Williams demonstrated that several of the absences or late arrivals were incorrectly documented. *Id.*

On March 28, 2017, Williams verbally notified Martin Marietta that he needed to begin his FMLA leave, the request was verbally approved, and Williams began taking time off to care for his father. Record Document 26-3 at 6. The parties agreed that the remaining FMLA leave forms would be sent to Williams's father's healthcare provider for completion. Record Document 26-3 at 6. After some difficulty transmitting the forms to Martin Marietta, it received the completed forms requesting FMLA leave to provide "caregiving for [Williams's father], assist with meals, [and] provide respite for step mother [sic]" beginning on April 7, 2017, the day after Williams's father died. Record Documents 26-3 at 7 and 26-8. This formal FMLA leave request was not approved. Record Document 26-3 at 7. Nonetheless, Williams was out of work from March 28, 2017 until April 10, 2017 without being marked absent or tardy. Record Document 20-2 at 90-91, 95. Martin Marietta granted Williams paid funeral leave from April 7 to April 10, 2017. *Id.* at 95.

In May 2017, Martin Marietta terminated Williams's employment for chronic attendance issues and his June 2016 write-up. Record Document 20-2 at 87, 94. According to Martin Marietta's records, Williams had two absences and ten late arrivals between June 2016 and May 2017. Record Document 20-2 at 87-91, 94. After the termination meeting, Williams called human resources and disputed the accuracy of Martin Marietta's attendance records. Record Documents 26-4 and 26-6. The human resources department reviewed Williams's contentions

and concluded that at least three[4] of the late arrivals were mistaken and should not have counted against Williams. Record Documents 20-2 at 94 and 26-6. Martin Marietta District Manager Jack Brown, who made the decision to discharge Williams, reviewed the corrected records and determined that this information did not warrant reversing the termination decision. Record Document 20-2 at 94.

After receiving notice of his right to sue from the EEOC, Williams filed suit alleging that Defendants violated his rights under the Family Medical Leave Act ("FMLA") and engaged in racial discrimination. Record Document 1. Defendants filed the instant motion for summary judgment seeking dismissal of all claims. Record Document 20. While Williams opposes the motion in regard to all FMLA claims, he does not oppose dismissal of his racial discrimination claim and instead concedes that this claim should be dismissed. Record Document 26-1 at 30 n.108. Because Defendants have carried their burden of demonstrating that Williams cannot prove his prima facie case of racial discrimination and because Williams concedes he does not have a viable claim, his racial discrimination claim is **DISMISSED with prejudice** and the remainder of this ruling will address only Williams's FMLA claims.

## LAW AND ANALYSIS

I. **Plaintiff's Evidentiary Objections**

The Court will first address the evidentiary objections raised in Williams's opposition to Defendants' motion for summary judgment. Williams objects to five exhibits attached to

---

[4] Martin Marietta concedes that three of the late arrivals were erroneous. Record Document 20-2 at 94. Williams contends that he demonstrated to the Martin Marietta human resources representative that at least five of the recorded late arrivals were erroneous. Record Documents 26-1 at 15, 29 and 26-6.

Defendants' motion: (1) the June 23, 2016 incident report [Record Document 20-2 at 51]; (2) the May 9, 2017 incident report [Record Document 20-2 at 87]; (3) Williams's attendance records [Record Document 20-2 at 88-91]; (4) an attendance document [Record Document 20-2 at 92]; and (5) attendance records of Floyd Brown and Kennith McCain [Record Document 20-2 at 97-103]. He also objects to Sections 5, 9, and 10 of Jack Brown's ("Brown") declaration [Record Document 20-2 at 94-95].

According to Williams, the five exhibits at issue are inadmissible hearsay pursuant to Federal Rule of Evidence 802 and do not qualify for any exception to the rule against hearsay. Record Document 26-1 at 17. He contends that the listed portions of Brown's affidavit are inadmissible because they are not based on the affiant's personal knowledge. *Id.* Martin Marietta responds that the exhibits are not offered for the truth of the matter asserted, and therefore are not inadmissible hearsay under Federal Rule of Evidence 801(c)(2). Record Document 29 at 10. It argues that Brown's declaration is admissible in its entirety because the challenged portions are statements of Brown's beliefs at the time he made the decision to discharge Williams. *Id.*

Federal Rule of Civil Procedure 56 allows a party to object to a court's consideration of any evidence submitted to support a motion for summary judgment that "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Any declaration submitted to support a motion for summary judgment "must be made on personal knowledge[.]" Fed. R. Civ. P. 56(c)(4). Under Federal Rule of Evidence 801, hearsay statements are those statements which are offered "in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(2).

The Court will first turn to the June 23, 2016 incident report [Record Document 20-2 at 51], the May 9, 2017 incident report [Record Document 20-2 at 87], and Williams's attendance records [Record Document 20-2 at 88-91]. Williams's objection to these exhibits is **OVERRULED**. As Martin Marietta argues, these documents are not offered for the truth of the matter asserted and as such are not hearsay per Federal Rule of Evidence 801(c)(2). Martin Marietta does not offer this evidence to demonstrate that Williams was in fact insubordinate in June 2016 or that he was in fact absent or tardy on the days listed. Instead, these documents are presented as evidence of the information Martin Marietta contends it relied on when deciding to discharge Williams.

Williams's objection to Section 5 of Brown's affidavit [Record Document 20-2 at 94] is **OVERRULED**. This paragraph contains statements regarding what Brown believed to be true when discharging Williams, statements authenticating the May 9, 2017 incident report, and a statement confirming that the information contained therein is a summary of the reasons he decided to terminate Williams's employment in May 2017. These statements are based on the affiant's personal knowledge and are therefore admissible.

Williams's remaining objections are **OVERRULED as moot** because based on the parties' arguments regarding the motion for summary judgment, the Court need not consider this evidence.

## II. <u>Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is appropriate when the pleadings, answers

to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322–23.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the nonmovant must demonstrate that there is, in fact, a genuine issue for trial by going "beyond the pleadings" and "designat[ing] specific facts" for support. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." *Id.* (internal quotation marks and citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1985) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the nonmovant is so "weak or tenuous" that it could not support a judgment in the nonmovant's favor. *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir. 1993).

Additionally, Local Rule 56.1 requires the movant to file a statement of material facts as to which it "contends there is no genuine issue to be tried." The opposing party must then set forth a "short and concise statement of the material facts as to which there exists a genuine

7

issue to be tried." W.D. La. R. 56.2. All material facts set forth in the movant's statement "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." *Id.*

### III. Plaintiff's FMLA Interference Claim

Martin Marietta argues that Williams has failed to establish a prima facie case of FMLA interference for several reasons. First, Williams cannot prove that he was denied any leave to which he was entitled because the leave was to care for his ailing father, yet it was not requested until after his father's death. Record Document 20-1 at 12. Second, Williams cannot prove that he gave proper notice of his intent to take FMLA leave. *Id.* Third, Williams cannot prove that he was prejudiced by the alleged FMLA violation. *Id.* at 13. According to Williams, he gave proper notice by informing Martin Marietta of his foreseeable need for FMLA leave, notifying it again when he needed to take the leave, and working to timely complete the necessary paperwork. Record Document 26-1 at 24. Williams argues that he was denied leave to which he was entitled because his request for leave was to care both for his father and for his stepmother after his father's death. *Id.* Finally, Williams contends that he was prejudiced because he lost the "right to structure his time in a way that left him protected and to take leave without fear of job loss." *Id.* at 25.

Under the FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). To establish a prima facie case under the interference clause, a plaintiff "must show: (1) he was an eligible employee; (2) his employer was subject to FMLA requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5)

8

his employer denied him the benefits to which he was entitled under the FMLA." *DeVoss v. Sw. Airlines Co.*, 903 F.3d 487, 490 (5th Cir. 2018) (quoting *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017)). A plaintiff must also show that he was prejudiced by the interference. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 90-91 (2002); *Downey v. Strain*, 510 F.3d 534, 539 (5th Cir. 2007).

In this case, Williams's interference claim must fail because, even if Martin Marietta interfered with his FMLA rights, he has not identified any way in which he was prejudiced by the alleged interference. For example, he does not allege that he was counted absent while on leave, that he was forced to take less leave than he desired, or that he suffered economic harm, like lost wages. Williams contends that he was prejudiced because Martin Marietta's actions denied him the right to structure his leave. He does not explain how this applies to his situation, though, besides citing to several cases finding that an employee was prejudiced when she was terminated for failing to return to work after exhausting her authorized FMLA leave. *Patel v. Saint Vincent Health Ctr.*, No. CIV.A. 12-298E, 2015 WL 630260, at *13 (W.D. Pa. Feb. 12, 2015); *Young v. Wackenhut Corp.*, No. CIV.A. 10-2608 DMC, 2013 WL 435971, at *6 (D.N.J. Feb. 1, 2013); *Nusbaum v. CB Richard Ellis, Inc.*, 171 F. Supp. 2d 377, 386 (D.N.J. 2001). In each of the three cases Williams cites to support his argument, the employers had in some way failed to give the employee proper notice regarding her FMLA leave. *Id.* The courts found that the employers' failure to provide proper notice caused prejudice because had the employer properly given notice, the employee could have made informed decisions about how best to utilize her available FMLA leave or taken the necessary steps to ensure her authorized FMLA leave did not expire, thus preventing termination for unauthorized absences. *Id.*

Williams's situation is not comparable, and his argument that he was prejudiced by the inability to structure his leave is therefore unpersuasive. Unlike the other employees, Williams does not allege that he was terminated for failing to return to work when he believed he was still excused due to the FMLA. In fact, the undisputed evidence is that he was not marked absent or tardy a single time during his absence from work. Further, Williams fails to identify any way in which he could have possibly structured his leave differently had the alleged interference not occurred. In sum, Williams cannot demonstrate that he was prejudiced by the alleged interference. His FMLA interference claim is therefore **DISMISSED with prejudice**.

## IV.   Plaintiff's FMLA Retaliation Claim

Williams also alleges that his termination was unlawful retaliation for exercising his FMLA rights. Martin Marietta argues that Williams's claim must be dismissed for several reasons. Record Document 20-1 at 13-16. First, he cannot establish a prima facie case of retaliation because he never requested FMLA leave to which he was entitled. *Id.* at 14. Second, Williams cannot show that "FMLA animus motivated the termination decision." *Id.* Third, the employees Williams identifies as comparators are not suitable comparators because they have better attendance records than Williams. *Id.* at 15. Fourth, even if Williams could establish a prima facie case, he cannot prove that Martin Marietta's legitimate reason for terminating him is pretextual. *Id.*

To state a claim for retaliatory discharge, a plaintiff must establish that: "(1) [he] engaged in a protected activity, (2) the employer discharged [him], and (3) there is a causal link between the protected activity and the discharge." *Tatum v. So. Co. Servs. Inc.*, 930 F.3d 709, 713 (5th Cir. 2019) (quoting *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005)). When there

is no evidence of discriminatory intent and the employee has established a prima facie case, the Court must apply the *McDonnell Douglas* framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Tatum*, 930 F.3d at 713. Under this framework, the burden first "shifts to the employer to articulate a legitimate, nondiscriminatory reason" for its action. *Tatum*, 930 F.3d at 713 (quoting *Richardson*, 434 F.3d at 332). If the employer does so, the "burden shifts back to the employee to show by a preponderance of the evidence that the employer's articulated reason is pretext for discrimination." *Id.* (quoting *Richardson*, 434 F.3d at 332-33). For FMLA retaliation claims, a plaintiff may also satisfy his burden by demonstrating that discrimination was a motivating factor in his termination. *Richardson*, 434 F.3d at 333. This requires establishing that, even though discrimination was not the only reason for the adverse employment action, "[it] actually play[ed] a role in the employer's decision making process and ha[d] a determinative influence on the outcome." *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 479-80 (5th Cir. 2016) (quoting *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 702 (5th Cir. 2014)). If proven, the burden shifts back to the employer to "prove that it would have taken the same action despite the discriminatory animus." *Richardson*, 434 F.3d at 333. The employer's burden at this step is "effectively that of proving an affirmative defense." *Id.*

    a. **Prima Facie Case**

Martin Marietta first argues that Williams did not engage in a protected activity because he did not submit his FMLA application until April 7, 2017, at which point he was no longer entitled to FMLA leave because his father had already died. However, this position overlooks the fact that Williams presented evidence that he alerted Martin Marietta that he would likely need to take FMLA leave in February 2017, received the paperwork to take such leave in

11

February, and requested to commence the FMLA leave in March 2017, prior to his father's death. Thus, at the time Williams requested leave, he was entitled to take FMLA leave and his request is a protected activity under the FMLA. *Harville v. Tex. A & M Univ.*, 833 F. Supp. 2d 645, 657 (S.D. Tex. 2011) (finding that requesting FMLA leave is a protected activity); *Cf. Lanier v. Univ. of Tex. Sw. Med. Ctr.*, 527 F. App'x 312, 316 (5th Cir. 2013) (employee could not show that she engaged in a protected activity because the text she sent requesting leave was not "sufficient to apprise [her employer] of her intent to request FMLA leave to care for her father."). Williams has therefore satisfied the first element of his prima facie claim.

It is undisputed that Williams's termination constitutes an adverse employment action, so the only remaining element of Williams's prima facie case is whether there is a causal link between his discharge and his request to take FMLA leave. Williams argues that the causal link is evidenced by the temporal proximity of his termination to his request for leave, Martin Marietta's failure to comply with its progressive discipline policy, and Martin Marietta's reliance on attendance records it knew to contain errors. Record Document 26-1 at 27. He has presented evidence that temporal proximity existed between both his initial February request for FMLA paperwork and the rescinded termination in February 2017 and between his leave of absence in April and his final termination in May 2017. *Id.* This temporal proximity evidence alone is sufficient to establish a causal connection at the prima facie stage. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (per curiam) (holding that to prove causation at the prima facie stage with evidence of temporal proximity, the temporal proximity must be "very close," and that three to four months is "very close" while twenty months is not); *Mauder v. Metro.*

*Transit Auth. of Harris Cty., Tex.*, 446 F.3d 574, 584 (5th Cir. 2006) (applying *Clark County Sch. Dist.* to an FMLA claim).

Williams has therefore satisfied his burden at the prima facie stage and the burden shifts to Martin Marietta to provide a legitimate, non-discriminatory reason for discharging Williams. It has done so. According to Martin Marietta, Williams was terminated for accruing multiple absences and late arrivals over the course of a year and having a previous suspension. Record Documents 20-1 at 15 and 20-2 at 87, 94. Hence, the burden shifts back to Williams to show that Martin Marietta's reasons are pretextual or that retaliation was a motivating factor in his termination.

### b. Pretext

Williams argues that the same facts that demonstrate a causal link between his termination and his request for FMLA leave prove that Martin Marietta's stated reasons for his discharge are pretextual. Record Document 26-1 at 29-30. That is, the failure to follow policy, temporal proximity, and Martin Marietta's reliance on records it knew to contain errors. According to Williams, Martin Marietta failed to comply with its policy because, after removing any of the erroneous absences or late arrivals, Williams only had the equivalent of five absences. Record Document 26-1 at 29 n.107. Under the policy, this warrants no more than a written warning, not termination. *Id.*

To demonstrate pretext, a plaintiff must show that the employer's proffered reason for the termination is "false or 'unworthy of credence.'" *DeVoss*, 903 F.3d at 492 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000)). Pretext must be shown by a preponderance of the evidence. *Tatum*, 930 F.3d at 713. When a plaintiff relies on temporal

13

proximity to prove pretext, the "suspicious timing" must be coupled with "other significant evidence of pretext." *Garcia v. Prof'l Contract Servs., Inc.,* 938 F.3d 236, 244 (5th Cir. 2019) (quoting *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999)). The *Garcia* court, summarizing prior holdings involving temporal proximity, noted that "evidence of temporal proximity combined with positive performance reviews was not enough to create an issue of fact regarding pretext." *Garcia*, 938 F.3d at 244 (citing *United States ex rel King v. Solvay Pharms., Inc.*, 871 F.3d 318, 334 (5th Cir. 2017)). It contrasted this with a case where temporal proximity, combined with a "plaintiff's dispute of events leading up to her termination," statements of other employees warning the plaintiff against engaging in the protected activity, and "employees who did not receive negative reviews even though they had the same problems that the plaintiff received poor reviews for" was sufficient to establish pretext. *Garcia*, 938 F.3d at 244 (citing *Shackelford*, 190 F.3d at 409).

In this case, Williams does not allege that anyone at Martin Marietta made disparaging comments about taking FMLA leave nor does he allege that he had highly positive reviews prior to requesting FMLA leave. Instead, he has presented evidence that he requested FMLA leave paperwork in February 2017. Within two weeks of this request, Martin Marietta attempted to discharge Williams, but reversed the decision after he demonstrated that Martin Marietta's decision was based on erroneously recorded attendance policy violations. From the end of March 2017 to early April 2017, Williams took what he intended to be FMLA leave to care for his father. He returned to work on April 10, 2017 and was documented as having two late arrivals that month. In May 2017, Martin Marietta discharged Williams and justified its actions with Williams's June 2016 write-up and subsequent attendance record. Williams convinced

14

Martin Marietta that three of the late arrivals were erroneously counted against him. Brown then reviewed his earlier termination decision and determined that he still believed Williams to have seven late arrivals or absences. Based on this, Brown declined to reverse the termination.

Williams argues that the Court should consider the fact that Martin Marietta relied on attendance records it knew to contain inaccuracies as evidence of pretext. In order for Williams to use this fact as evidence of pretext, he must not only show that Martin Marietta discharged him "based on justified absences [or late arrivals], but also that [Martin Marietta's] error was a pretext for discrimination." *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 835 (5th Cir. 2020). Williams has not done so here. The undisputed evidence is that Martin Marietta used an automated attendance system to record when an employee arrived to work late or failed to clock-in as scheduled. Record Document 20-2 at 94. This data was used to tally each employee's attendance record weekly and the information was periodically presented to Brown. *Id.* In the two instances that Martin Marietta relied on this information to discharge Williams and he informed Martin Marietta that its decision may have been based on inaccurate information, it considered his arguments about why a certain absence or late arrival was erroneous, reevaluated the basis for its termination decision after correcting errors, and in one case reversed its decision. Thus, Williams has not shown that Martin Marietta's reliance on the automated attendance records was a pretext for discrimination or retaliation.

At the time he was discharged, Martin Marietta believed that Williams had two absences and ten late arrivals between June 2016 and May 2017, with two of the late arrivals occurring after Williams returned from leave in April 2017. After his termination, Williams contested the records and the human resources representative acknowledged to Williams that as many as five

15

of his late arrivals may have been erroneous. The human resources representative reviewed this and reported to Brown that three of the late arrivals were erroneous, thus leaving Williams with a record of two absences and seven late arrivals. Brown decided this reduction in late arrivals did not warrant reversing his termination decision. While Williams may disagree with the number of absences that were erroneous, this does not mean that it is evidence of pretext because "even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason." *Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991).

Williams has also failed to create a genuine issue of fact regarding whether Martin Marietta followed its progressive discipline policies. Under the Martin Marietta attendance policy in effect at the time, two late arrivals equaled one absence. Record Document 20-2 at 47. Generally, three reported absences within any twelve-month period warranted coaching as discipline. *Id.* at 49. The level of discipline progressed as absences increased, with six absences warranting a three-day suspension and seven absences leading to termination. *Id.* However, the policy states that this progressive discipline is "merely a guideline" and notes that "[i]f an employee has current disciplinary actions on file for any reason, then attendance policy violations would result in disciplinary action at the next appropriate step." *Id.* The undisputed evidence is that Williams had a current disciplinary action on file—his June 2016 write-up and three-day suspension for insubordination.[5] *Id.* at 12, 51. The incident report mirrored the

---

[5] The Court recognizes that Williams disputes the facts underlying this disciplinary action. What did or did not occur is immaterial to the Court's analysis, however, because his employer is not required to make "proper decisions, only non-discriminatory ones." *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005); *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 835 n.5 (5th Cir. 2020) (applying *Bryant* to an FMLA claim). In this case, the suspension

attendance policy in stating that "[a]ny further performance infractions will result in further disciplinary action, up to and including termination." *Id.* at 51. The undisputed evidence also demonstrates that, after Williams challenged his attendance records, Brown believed Williams accrued two absences and seven late arrivals between June 2016 and his termination in May 2017, which constitute "performance infractions" that could result in his termination. Martin Marietta therefore did not violate its policies in terminating Williams, and the Court will not consider this as evidence of pretext.

In short, Williams is left with only the temporal proximity between the rescinded termination and his February request for FMLA paperwork and between his final termination in May and his attempt to take FMLA leave in April to support his claim. This evidence is not sufficient to demonstrate that Martin Marietta's stated reasons for his termination were pretextual or that FMLA retaliation was the motivating factor in Williams's discharge. Williams's FMLA retaliation claim is **DISMISSED with prejudice**.

## CONCLUSION

For the aforementioned reasons, Defendants' motion [Record Document 20] is **GRANTED**. Plaintiff's claims are **DISMISSED with prejudice**. Plaintiff's evidentiary objections are **OVERRULED**. A judgment consistent with this Memorandum Ruling will issue herewith.

**THUS DONE AND SIGNED** this 30th day of July, 2020.

_____
ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE

---

occurred months before Williams requested FMLA leave, and therefore cannot be based on any retaliatory animus toward Williams's FMLA protected activity.